**CT Corporation**

**Service of Process Transmittal**
05/19/2021
CT Log Number 539586045

**TO:** Brittani Rushing
Guard Insurance Group, Inc.
39 PUBLIC SQ
WILKES BARRE, PA 18701-2509

**RE:** **Process Served in Colorado**

**FOR:** WestGUARD Insurance Company  (Domestic State: PA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | 2505 6TH STREET, LLC, Pltf. vs. WestGUARD Insurance Company And AMGUARD INSURANCE COMPANY, Dfts. |
| **DOCUMENT(S) SERVED:** | - |
| **COURT/AGENCY:** | None Specified<br>Case # 2021CV30004 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | CT Corporation System, Centennial, CO |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 05/19/2021 at 14:14 |
| **JURISDICTION SERVED :** | Colorado |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 05/19/2021, Expected Purge Date: 05/24/2021<br><br>Image SOP<br><br>Email Notification,  Brittani Rushing  brittani.rushing@guard.com<br><br>Email Notification,  Alex Klinges  alexandra.klinges@guard.com |
| **REGISTERED AGENT ADDRESS:** | CT Corporation System<br>7700 E Arapahoe Road<br>Suite 220<br>Centennial, CO 80112<br>866-665-5799<br>SouthTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

5/19
1:58 PM

DATE FILED: May 18, 2021 2:33 PM
FILING ID: 7A28D35AB2387

| | |
|---|---|
| **DISTRICT COURT, LINCOLN COUNTY, COLORADO**<br>Address of Court:   103 3rd Avenue<br>Hugo, CO 80821<br>Phone: 719-743-2455 | CASE NUMBER: 2021CV30004 |
| **Plaintiff: 2505 6TH STREET, LLC**<br>**d/b/a BAYMONT BY WYNDAM LIMON**<br><br>v.<br><br>**Defendants: WESTGUARD INSURANCE COMPANY AND**<br>**AMGUARD INSURANCE COMPANY** | ▲ COURT USE ONLY ▲ |
| **ATTORNEY FOR PLAINTIFF:**<br>Timothy G. Burchard, II, Esq. #48635<br>Jonathan E. Bukowski, Esq. #45614<br>MERLIN LAW GROUP, P.A.<br>1001 17th Street, Suite 1150<br>Denver, CO 80202<br>Phone: 720-665-9680<br>Fax: 720-665-9681<br>E-Mail: tburchard@merlinlawgroup.com<br>E-Mail: jbukowski@merlinlawgroup.com | Case Number:<br><br><br><br><br>Division          Courtroom |

### DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT AND JURY DEMAND

1. This cover sheet shall be filed with the initial pleading of a complaint, counterclaim, cross-claim or third party complaint in every district court civil (CV) case. It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

2. Simplified Procedure under C.R.C.P. 16.1 **applies** to this case **unless** (check one box below if this party asserts that C.R.C.P. 16.1 **does not** apply):

   ☐ This is a class action, forcible entry and detainer, Rule 106, Rule 120, or other similar expedited proceeding, **or**

   ☒ This party is seeking a monetary judgment against another party for more than $100,000.00, including any penalties or punitive damages, but excluding attorney fees, interest and costs, as supported by the following certification:

By my signature below and in compliance with C.R.C.P. 11, based upon information reasonably available to me at this time, I certify that the value of this party's claims against one of the other parties is reasonably believed to exceed $100,000."

**Or**

☐ Another party has previously filed a cover sheet stating that C.R.C.P. 16.1 does not apply to this case.

3. ☒ This party makes a **Jury Demand** at this time and pays the requisite fee. See C.R.C.P. 38. (Checking this box is optional.)

Date: <u>May 18, 2021</u>          <u>s/ Timothy G. Burchard, II</u>
                                        **Signature of Party or Attorney for Party**

**NOTICE**
This cover sheet must be served on all other parties along with the initial pleading of a complaint, counterclaim, cross-claim, or third party complaint.

Page 2 of 2

| DISTRICT COURT, LINCOLN COUNTY, COLORADO | |
|---|---|
| Address of Court:     103 3rd Avenue<br>Hugo, CO 80821<br>Phone: 719-743-2455 | DATE FILED: May 18, 2021 2:33 PM<br>FILING ID: 7A28D35AB2387<br>CASE NUMBER **COURT USE ONLY** ▲ |
| **Plaintiff: 2505 6TH STREET, LLC**<br>**d/b/a BAYMONT BY WYNDAM LIMON**<br><br>**v.**<br><br>**Defendants: WESTGUARD INSURANCE COMPANY AND**<br>**AMGUARD INSURANCE COMPANY,** | Case Number:<br><br>Division:     Ctrm: |
| **DISTRICT COURT CIVIL SUMMONS** | |

**TO THE ABOVE-NAMED DEFENDANT:   WESTGUARD INSURANCE COMPANY**

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint. If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you. If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you. Your answer or counterclaim must be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

Dated: <u>May 18, 2021</u>                    <u>*s/ Timothy G. Burchard, II*</u>
                                                     Timothy G. Burchard, II, Esq., 48635
                                                     MERLIN LAW GROUP, P.A.
                                                     1001 17th Street, Suite 1150
                                                     Denver, CO  80202

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**

**WARNING:** A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal. The plaintiff has 14 days from the date this summons was served on you to file the case with the court. You are responsible for contacting the court to find out whether the case has been filed and obtain the case number. If the plaintiff files the case within this time, then you must respond as explained in this summons. If the plaintiff files more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

TO THE CLERK: If the summons is issued by the clerk of the court, the signature block for the clerk or deputy should be provided by stamp, or typewriter, in the space to the left of the attorney's name.

| | |
|---|---|
| **DISTRICT COURT, LINCOLN COUNTY, COLORADO**<br>Address of Court:    103 3rd Avenue<br>                       Hugo, CO 80821<br>                       Phone: 719-743-2455 | DATE FILED: May 18, 2021 2:33 PM<br>FILING ID: 7A28D35AB2387<br>CASE NUMBER: 2021CV30004 |
| **Plaintiff: 2505 6TH STREET, LLC**<br>**d/b/a BAYMONT BY WYNDAM LIMON**<br><br>**v.**<br><br>**Defendants: WESTGUARD INSURANCE COMPANY AND**<br>**AMGUARD INSURANCE COMPANY,** | <br><br><br><br><br>▲FOR COURT USE ONLY▲ |
| **ATTORNEY FOR PLAINTIFF:**<br>Timothy G. Burchard, II, Esq. #48635<br>Jonathan E. Bukowski, Esq. #45614<br>MERLIN LAW GROUP, P.A.<br>1001 17th Street, Suite 1150<br>Denver, CO 80202<br>Phone: 720-665-9680<br>Fax: 720-665-9681<br>E-Mail: tburchard@merlinlawgroup.com<br>E-Mail: jbukowski@merlinlawgroup.com | Case Number:<br><br>Div.:        Ctrm: |
| **COMPLAINT AND JURY DEMAND** | |

**COMES NOW** 2505 6th Street, LLC, d/b/a Baymont by Wyndam Limon, by and through its undersigned counsel, and hereby submits this Complaint and Jury Demand against Defendants, WestGUARD Insurance Company and AmGUARD Insurance Company, as follows:

## PARTIES

1.      Plaintiff, 2505 6th Street, LLC, d/b/a Baymont by Wyndam Limon ("Plaintiff" or "Baymont"), is a limited liability company with its principal place of business in Limon, Colorado and its principal office in Littleton, Colorado.

2.      Defendant, AmGuard Insurance Company ("AmGUARD"), is an insurance company domiciled in the State of Pennsylvania authorized to engage in the business of insurance in the State of Colorado.

3.      Defendant, WestGUARD Insurance Company ("WestGUARD"), is an insurance company domiciled in the State of Pennsylvania authorized to engage in the business of insurance in the State of Colorado.

4.      AmGUARD is a wholly-owned subsidiary of WestGUARD which is a wholly-owned subsidiary of National Indemnity Company, a Nebraska corporation, which is a wholly-owned subsidiary of Berkshire Hathaway, Inc., a Delaware corporation.

5.      Berkshire Hathaway Inc., has no parent company and is a holding company organized under the laws of Delaware that directly owns all of the issued and outstanding common stock of National Indemnity Company, which directly owns all of the issued and outstanding common stock of WestGUARD, which directly owns all of the issued and outstanding common stock of AmGUARD, and the sole ultimate controlling person of the holding company system that includes AmGUARD and WestGUARD is Warren Buffett.

6.      Berkshire Hathaway Guard Insurance Companies is a trade name.

7.      Defendants AmGUARD and WestGUARD (collectively "Defendants") do business under the trade name Berkshire Hathaway Guard Insurance Companies ("Berkshire Hathaway").

## JURISDICTION AND VENUE

8.      This Court has subject matter and personal jurisdiction over the parties to this cause of action.

9.      A cause of action exists under Colorado state law for claims regarding the conduct complained of herein.

10.     Jurisdiction is proper as to Defendants pursuant to Colorado Revised Statutes § 13-1-124(1)(a), (b), and (d) because Defendants conducted the business at issue in this action,

committed tortious misconduct and contracted to insure property within Lincoln County, Colorado.

11.     Venue is proper pursuant to Col.R.Civ.P. 98 because the events which constitute the basis of this Complaint and Jury Demand, including, but not limited to, the formation of the insurance policy and location of the property in question, occurred in Lincoln County, Colorado.

<strong><u>FACTS COMMON TO ALL COUNTS</u></strong>

**A.     <u>THE PROPERTY</u>**

12.     Baymont maintains a hotel property located at 2505 6th Street, Limon, Colorado 80828 (the "Property").

13.     The Property consists of a two-story wood framed hotel, Porte Cochere, and a storage shed.

14.     The hotel includes 48 guest rooms, an indoor pool, fitness center, meeting room, laundry facility, and dining area where a complimentary breakfast is served daily.

15.     The Property also includes rooms for extended stay, or "residence" at the hotel.

16.     At all times material hereto, the exterior walls of the hotel were clad with a painted exterior insulation and finish system, commonly referred to as EIFS. The hip style roofs of the hotel and Porte Cochere are covered with architectural shingles.

17.     The gable style roof covering the storage shed was also provided with architectural shingles.

**B.     <u>APPLICABLE PROVISIONS OF THE INSURANCE POLICY</u>**

18.     Baymont obtained an all-risk, replacement cost value, policy of insurance from AmGUARD under Policy Number NEBP030396 (the "Policy").

19.     The Policy was issued with effective dates of November 1, 2019 through November 1, 2020 ("Policy Period").

20.     The Policy provides coverage for direct physical loss of or damage to the Property resulting from hail.

21.     The Policy does not include a definition of direct physical loss.

22.     The Policy does not include a definition of direct physical damage.

23.     On August 2, 2020, during the Policy Period, a hail and wind storm occurred at the Property (the "Storm").

24.     The August 2, 2020 Storm caused damage to the Property.

25.     At the time of the Storm, direct physical loss of or damage caused by hail was a covered cause of loss under the Policy.

26.     Pursuant to its Policy, Defendants agreed to repair, rebuild and replace damaged Property with materials of like kind and quality.

27.     The Policy does not include a matching limiting endorsement or exclusion.

28.     The Policy does not limit or exclude coverage for direct physical loss or damage caused by hail to a roof covering resulting in a reduction of the useful life of the roof covering.

29.     The Policy does not limit or exclude coverage for direct physical loss or damage caused by hail to a roof covering resulting in a loss of performance of the roof covering.

30.     The Policy does not include a limitation or exclusion of coverage for direct physical loss or damage caused by hail to a roof covering resulting in a loss in the market value of the roof covering.

31.     Defendants, by and through its agents and representatives, had knowledge (or constructive knowledge) of the construction of the insured Property, the age and condition of the

**Page 4 of 5**

insured Baymont Property, and the use of such Property, and at all material times hereto Defendants decided to insure and continue to insure the Baymont Property. Defendants having such knowledge accepted premium payments from Baymont in exchange for insuring the Baymont Property against loss resulting from windstorm/hail and other perils.

32.  Defendants must pay for the cost to achieve a reasonable uniform appearance between the repair, rebuild or replacement of the damaged property and the materials existing on the Property. *See Hamlet Condominium Ass'n v. American Mutual Family Ins. Co.*, 2016 CV 30594 (Co. Dist. Ct., April 12, 2017).

### C.  THE SUBJECT HAIL AND WINDSTORM

33.  On August 2, 2020, during the Policy period, the Baymont Property suffered direct physical loss and/or damage resulting from the Storm.

34.  The Storm produced hailstones measuring up to 1.75 to 2.00 inches in diameter.

35.  The hailstones produced during the Storm impacted the Baymont Property.

36.  Among other things, hailstones from the Storm struck and damaged the roof coverings of the hotel, a Porte Cochere, EIFS siding, metal roof vent caps, windows, gutters, and a storage shed at the Baymont Property (the "Loss").

37.  Hail stone impacts from the Storm caused openings to the roofing system resulting a failure of the roof covering to perform its intended function of keeping out the elements for the remainder of its original, useful life.

38.  The Storm created openings to the roofing system of the Property have the potential to allow the elements to penetrate into the interior of the Property.

39.  The Storm created openings to the roofing system of the Property have allowed moisture to penetrate into the interior of the Property.

40.     Hail stone impacts from the Storm caused openings to the EIFS siding resulting a failure of the roof covering to perform its intended function of keeping out the elements for the remainder of its original, useful life.

41.     The Storm created openings to the EIFS siding of the Property have the potential to allow the elements to penetrate into the interior of the Property.

42.     The Storm created openings to the EIFS siding of the Property have allowed moisture to penetrate into the interior of the Property.

43.     Hail stone impacts from the Storm caused openings to the windows resulting a failure of the roof covering to perform its intended function of keeping out the elements for the remainder of its original, useful life.

44.     The Storm created openings to the windows of the Property have the potential to allow the elements to penetrate into the interior of the Property.

45.     The Storm created openings to the windows of the Property have allowed moisture to penetrate into the interior of the Property.

46.     The penetration of moisture through the roof, EIFS siding, and windows has caused damage to the interior of 34 of the 48 available guest rooms.

47.     Consequently, Baymont has had to significantly limit the number of guest rooms available, causing a serious interruption to its business and ability to serve its guests.

48.     The moisture penetration through the roof, EIFS siding, and windows has created mold and contamination to the interior of the Property resulting in a direct impact on the health, safety, and welfare of hotel guests, staff, and residents.

49.     Baymont promptly reported its Loss to Defendants.

50. Defendants assigned Claim Number NEBP030396-001-001-001 to Baymont's Property Loss (the "Claim").

**D.** **AMGUARD'S ADJUSTMENT OF THE LOSS**

51. At all times relevant to this Complaint, employees of WestGUARD provided claims investigation and handling for the insurance claims at issue in this litigation, which were noticed and filed with AmGUARD pursuant to the terms and conditions of the Policy.

52. At all times relevant to this Complaint, various service and operating agreements, including intercompany and related-party agreements, were in place relating to administrative services, intercompany services, cost sharing, and/or tax allocation among Defendants. More specifically, upon information and belief multiple "Administrative Service Agreements," an "Intercompany Services and Cost Sharing Agreement" and/or multiple "Service Agreements" were in place that identify the services to be provided, expenses to be shared with payment terms, compensation to be provided, allocation of expenses and payment terms, and tax liabilities to be paid and payment terms by and between Defendants, by WestGUARD to AmGUARD and other related companies, and to WestGUARD or AmGUARD from other related companies.

53. Upon information and belief, Defendants assign claims to its adjusters without regard for their qualifications, skills, and training, or its supervision and oversight of the adjusters' abnormally high volume of assigned claims.

54. Defendants' reckless indifference to the assigned adjusters' qualifications, skills, and training, or its supervision and oversight of the adjusters' abnormally high volume of assigned claims is part of an institutional pattern and practice of improper claims handling practices.

55. Defendants assigned the Claim to their adjuster, William Ardoline.

56.     Defendants also retained and assigned an independent adjuster, Brian Rubidoux of Engle Martin & Associates ("Engle Martin") to the Claim.

57.     Upon information and belief, Engle Martin identified broken windows, fractured stucco, and widespread hail strikes to the shingles roofs.

58.     To date, Defendants have not provided any estimate for repair of the Storm caused damage, payment for Storm caused damage, or a copy of any written report from William Ardoline or its retained independent adjuster.

**E.     BAYMONT FORCED TO ADJUST ITS OWN CLAIM**

59.     On or about October 1, 2020, Baymont retained a contractor to provide an estimate of repairs for the loss ("Baymont's Contractor").

60.     On or about October 12, 2020, Baymont's Contractor drafted and presented to Defendants its estimate of repairs for the exterior damages to the roofs, siding, windows, gutters, doors, hotel sign, paint, exterior light fixtures, air conditioning units, and fencing totaling $346,580.36 in replacement cost value and $271,586.63 in actual cash value ("Baymont's Initial Estimate").

61.     Baymont's Contractor provided Defendants with 221 photographs of the Property illustrating the severity of the damage and condition of the Property as a consequence of the Storm caused damage.

62.     On or about October 20, 2020, Baymont's Contractor drafted and provided to Defendants a supplement to Baymont's Initial Estimate of repairs for the exterior damages which included additional repair line-items and or costs related to cleaning, general demolition, drywall, equipment use and rental, finish hardware, glass, glazing, and storefronts, painting, stucco and

exterior plaster, temporary repairs, window treatments, and windows totaling $434,949.90 in replacement cost value and $343,811.81 in actual cash value ("Baymont's First Estimate").

63.     Baymont's Contractor has provided an interior moisture report which shows elevated levels of moisture within the interior of the Property.

64.     The estimates and photographs presented to Defendants by Baymont in October 2020 provided Defendants with notice of damages to the Property caused by the Storm.

65.     The estimates and photographs presented to Defendants by Baymont in October 2020 provided Defendants with notice of a covered loss to the Property under the Policy as a consequence of the Storm.

66.     The estimates and photographs presented to Defendants by Baymont in October 2020 provided Defendants with sufficient notice to make an actual cash value payment for damages sustained to the Property as a consequence of the Storm.

67.     In October 2020, Defendants knew or should have known that coverage for the Loss was due and owing to Baymont.

68.     To date, Defendants have failed to accept liability for, or deny, the Claim.

69.     On or about December 2, 2020, Mr. Ardoline sent an e-mail to Baymont providing:

> As of last week we were awaiting the expert report and I have requested Brian please provide status on that asap.
>
> Brian, please advise status of their report.
>
> Jeff, please keep in mind the insured has a duty to mitigate their damages and repairs need to begin as long as the expert and IA don't need any further inspections which to my knowledge I don't believe they do. Brian, please confirm.
>
> Advising repairs need to begin is not confirming coverage.

**Page 9 of 10**

70.     In addition to presenting the October estimates, Baymont's Contractor completed emergency services to the Property including placing tarps on the roofs, felting over broken windows, and other mitigation to avoid further weather-related damages as well as to avoid security and safety issues.

71.     On April 8, 2021, Baymont requested that Defendants provide availability to meet on site to discuss the unpaid damages.

72.     Baymont retained a Colorado licensed engineer to perform a Storm damage assessment of the Property ("Baymont's Engineer").

73.     Defendants' requirement that its insured retain an engineering expert to support an undisputed loss is part of an institutional pattern and practice of improper claims handling practices.

74.     This institutional pattern and practice of improper claims handling practices not only delays payment of covered benefits, but forces an insured to complete its own adjustment of an insurance loss.

75.     Baymont's Engineer performed an inspection of the Property on March 29, 2021 and March 30, 2021.

76.     During its inspection, Baymont's Engineer documented Storm caused damage to the roofing systems, EIFS wall system consisting of through fractures and chipping consistent with impact from hail stones, the vinyl window units and glass, metal framed passage doors and their bracket/hinge system, masonry veneer at the bottom of the wall along the east elevation, vinyl fencing along the south elevation, fracture to an entry card reader system mounted on an exterior passage door along the south elevation, Indented metals including flashing and the grills/cabinetry covering the wall mounted PTAC units.

77.     Following its inspection, Baymont's engineer provided a written report of its

observations and conclusions which noted:

a.      *based on the results of its investigation, GRK identified evidence of significant
storm damage, consistent with elevated wind forces and hail impact to the Property.*

b.      *the localized wind damaged shingles, where inspected, are direct openings which
allow for the entrance of moisture and the outside elements.*

c.      *evidence of hail impact on the order of 1.75 to 2.0-inches in diameter had been
consistently identified to the roof shingles. Widespread hail damages occurred to
all slopes inspected and the roofs have been significantly damaged and
compromised. In addition to through shingle fracturing which will allow for the
entrance of moisture and the outside elements, the concentrated loss of granules at
impact locations are permanent, widespread, will lead to premature product
failure, and cannot be restored to pre-loss conditions by repairs. Individual spot
repair is impractical and not a viable option and, in our opinion, full roof
replacement down to the decking is warranted.*

d.      *significant hail impact damage to the vinyl window units resulted in fractures to
the frame, glazing bead damage, and broken glass. This level of damage creates
direct openings which allow for the entrance of moisture and the outside elements
and the structural integrity of the window installation has been compromised. The
bead is specifically installed not only for aesthetics, but to secure the glass in the
sash or frame and failure of the glazing bead can result in the window glass
physically being blown out of the frame. We recommend all hail damaged windows
be repaired and/or replaced, as necessary. Where window repairs are not
applicable, we recommend the windows be replaced with a CODE complaint
window of similar quality and construction to the one being removed.*

e.      *the level of hail impact evidenced to the windows, combined with the noted EIFS
damages, rise to the level such that these damages have resulted in direct openings
which allow for the entrance of moisture and the outside elements. As shown,
staining to the interior windowsills, microbial growth on interior drywall, and
varying degrees of moisture levels behind the EIFS system had been positively
identified at various locations at the time of the inspection.*

f.      *We recommend all other wind and hail damaged building materials be repaired
and/or replaced, as necessary, including, but not limited to, the following:*

        i.   *EIFS- Note: The damage to the EFIS materials must be addressed by
suitable repair or replacement to ensure that the structural integrity and
particularly the waterproof barrier and moisture resistance is fully
restored.*

        ii.  *Masonry veneer along the east elevation (Photos 12 & 13)*

**Page 11 of 12**

     *iii.*  *Signage*
     *iv.*  *Entry card readers*
     *v.*  *Metal passage doors*
     *vi.*  *Interior water intrusion damages*
     *vii.*  *Indented metals including flashing and grill/cabinetry covering the wall mounted PTAC units*
     *viii.*  *Wood fascia*
     *ix.*  *Vinyl fencing*

78.     The Photographs below Paragraph 78 provide exemplar illustrations of the condition of the Property during the inspections performed by Baymont's Engineer in March 2021.



79.     On May 7, 2021, Baymont provided Defendants with a copy of the report prepared by its Engineer.

80.     On May 7, 2021, Baymont provided Defendants with an updated repair estimate to address the increased construction costs as well as the findings provided by Baymont's Engineer ("Baymont Updated Estimate").

81.     Defendants have not provided an approval or denial of the Initial, First, or Updated Baymont Estimate.

82.     On May 7, 2021, Baymont requested that Defendants provide a status update as to whether it intended to adjust Baymont's Claim or if Defendants had abandoned the adjustment of Baymont's Claim.

83.     On May 11, 2021, Baymont attempted to contact Defendants to work towards the repair of the exterior and interior of the Property.

84.     To date, Defendants have failed to issue any payment for the Loss.

85.     To date, Defendants have failed to acknowledge or contact Baymont or its representatives to help in rebuilding the Property.

86.     Baymont has continually attempted to communicate with Defendants via telephone calls and written correspondence concerning its Claim. Defendants have yet to provide any repair estimate, payment, or engineering report to Baymont for the damage caused by the Storm.

87.     Baymont has fulfilled all duties required of it under the Policy after discovery of the Loss.

88.     Baymont has performed all conditions precedent and subsequent required under the Policy, or alternatively, have been excused from performance by the acts, representations, and conduct of Defendants.

89.     While Baymont has cooperated with Defendants in their investigation of the Claim, Defendants refuse to be open and honest in its dealings with Baymont, including the concealment of relevant Claim file materials obtained from its consultants such as photographs, field notes, and communications relating to the Storm and Claim.

90.     The actions of Defendants have caused Baymont great financial harm. The cost of repairs to the Property in dispute have increased due to the unreasonable delay caused by Defendants' failure to adjust the Claim. Baymont has also incurred significant costs in its retention of an attorney and professional engineer to confirm the unpaid damage to the Property.

91.     The resulting moisture penetration has caused mold and contamination issues which directly impact on the health, safety, and welfare of Baymont's hotel guests, staff, and residence. Additionally, the mold and contamination issues will continue to interrupt to Baymont's business and its ability to serve its guests.

92.     Plaintiff has repeatedly requested a copy of Defendants' and/or Engle Martin's estimates of the damages, which Defendants have refused to provide.

93.     Defendants failed to treat Baymont in good faith and with fair dealing by unreasonably and wrongfully requiring Baymont to retain an engineer and submit an engineering report.

94.     Defendants have wrongfully delayed paying the amounts owed to Baymont under the Policy, and Defendants have failed to treat Baymont in good faith and with fair dealing.

95.     Defendants have failed to conduct an adequate investigation and such failure has led to a failure to adjust the Claim by Defendants.

96.     Defendants failed, and continue to fail, to pay for all damages resulting from the Covered Loss despite Baymont, though its retained professionals, having advised Defendants of the covered loss and/or damage as well as the necessary scope of repairs to put the Property in its pre-loss condition.

97.     To date, Defendants have failed to issue a claim payment or denial letter to Baymont.

**Page 14 of 15**

98.    To date, Defendants have failed to issue an estimate of repairs for the Loss.

99.    To date, Defendants have failed to provide written notification of any Policy provision, condition or exclusion relied upon for Defendants' refusal to pay any amount for damages claimed by Baymont.

100.    As a result of Defendants' failure to properly investigate Baymont's covered Loss and Defendants' failure to pay for any damage as required by the Policy, Baymont has been unable to repair and/or replace the damaged Property.

101.    As a result of Defendants' failure to pay for any damage as required by the Policy, Baymont has suffered financial harm.

102.    As a result of Defendants' failure to properly adjust the Claim, their refusal to pay for the true value of the covered Loss to the Property, and their continued delay in accepting or denying the Claim, Baymont had no choice but to hire its own professionals, incurring costs and expenses associated with a proper evaluation and investigation of its covered Loss.

103.    Defendants unreasonable conduct, including its failure to issue payment for the damages identified by its consultant, refusal to meaningfully communicate with Baymont, and complete avoidance and/or rejection of additional evidence from Baymont's contractor and professional engineer has effectively compelled Baymont to institute litigation to recover amounts due under the insurance Policy.

104.    As a result of Defendants' wrongful acts and omissions, Baymont was forced to retain the professional services of Merlin Law Group, PA, who is representing Baymont with respect to these causes of action.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

105.    Baymont realleges and reaffirms Paragraphs 1-104 as if fully set forth herein.

106.     Baymont purchased an all-risk Policy requiring Defendants to pay for any and all fortuitous damages resulting from a loss not expressly excluded or otherwise limited by the Policy.

107.     Defendants sold, in exchange for valuable consideration, the Policy, which was in effect from November 1, 2019 through November 1, 2020

108.     The Policy between Baymont and Defendants is a binding contract.

109.     Baymont paid premiums and otherwise performed all conditions precedent to recovery of benefits under its Policy with Defendants.

110.     Defendants failed to provide the contractually required and covered benefits to Baymont.

111.     Defendants' failure to pay for damages to the Property caused by the Storm constitutes a breach of contract.

112.     Defendants' failure to honor their obligations under the Policy is a breach of contract.

113.     Defendants' breach of contract has damaged Baymont.

114.     Due to Defendants' breach of the Policy, Baymont has suffered at least $1,000,000 in contractual damages, less any amounts for applicable deductibles, by way of unpaid insurance proceeds and benefits; and has been forced to retain counsel, and further has been damaged by a sum to be determined at trial and final judgment.

115.     Baymont is entitled to all benefits due and owing under the Policy.

**WHEREFORE**, Plaintiff, 2505 6th Street, LLC, d/b/a Baymont by Wyndam Limon, respectfully request this Court enter judgment against, Defendants, AmGUARD Insurance Company and WestGUARD Insurance Company, for damages resulting from its breach of

contract, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and such other relief as the Court deems appropriate.

**SECOND CLAIM FOR RELIEF**
**(Unreasonable Delay and Denial of Payment of Covered Benefits**
**Pursuant to C.R.S. §§ 10-3-1115 and 10-3-1116)**

116.   Baymont realleges and reaffirms Paragraphs 1-115 as if fully set forth herein.

117.   Under Colorado Revised Statute § 10-3-1115, an insurer who delays or denies payment to an insured without a reasonable basis for its delay or denial is in breach of the duty of good faith and fair dealing.

118.   Under Colorado Revised Statute § 10-3-1115, an insurer's delay or denial is unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

119.   Baymont is a first-party claimant within the meaning of Colorado Revised Statute § 10-3-1115(1)(b)(1).

120.   Defendants had the non-delegable duty to investigate the claim objectively and to advise Baymont of coverage under the Policy.

121.   Defendants have unreasonably delayed payment to Baymont. Measured against objective industry standards for claim handling and payment, Defendants' actions have unreasonably delayed payment of the loss and damage. As more fully alleged above, Defendants have failed to provide an estimate, or payment, for undisputed hail damages identified by its independent adjuster. Defendants have failed to consider the additional information and photographs provided by Baymont's contractor and engineer identifying hail damages to the Property. Defendants have failed to acknowledge with reasonable promptness pertinent

**Page 17 of 18**

communications with respect to the Claim, including a complete failure to substantively respond to communication over the past seven months.

122.    Instead of working through the differences in the Claims with Baymont and/or Baymont's representatives, Defendants chose to cease all communication and otherwise ignore its obligation to adjust Baymont's Claim.

123.    Defendants knew or had reason to know that there is no reasonable basis for failing to issue payment for Baymont's covered Loss under the Policy.

124.    Defendants have delayed payment of covered benefits to Baymont without a reasonable basis for its action by failing to give due consideration to the opinions of Baymont's contractor and professional licensed engineer.

125.    It is apparent from Defendants' conduct in the handling of Baymont's Claim that Defendants have adopted a plan or approach to delay, as much as possible, its handling and payment of Baymont's Claim.

126.    Defendants have delayed a Claim decision and payment of covered benefits to Baymont without a reasonable basis for its action by its failure to timely pay all amounts not in dispute.

127.    As a result of Defendants' material breaches of the Policy, Baymont has been unable to move forward with any repairs to its Property.

128.    Based upon the foregoing Paragraphs, Baymont is therefore entitled to two times the covered benefit that have been delayed and denied to it, attorneys' fees, and costs pursuant to C.R.S. § 10-3-1116, together with pre-judgment interest at the highest rate allowed by law.

**WHEREFORE**, Plaintiff, 2505 6th Street, LLC, d/b/a Baymont by Wyndam Limon, respectfully request this Court enter judgment against, Defendants, WestGUARD Insurance

Company and AmGUARD Insurance Company, for damages authorized pursuant to Colorado Revised Statute § 10-3-1116, costs, prejudgment interest, attorneys' fees pursuant to applicable law, and other such relief as the Court deems appropriate.

### THIRD CLAIM FOR RELIEF
#### (Common Law Bad Faith)

129. Baymont realleges and reaffirms Paragraphs 1-128 as if fully set forth herein.

130. Defendants owed duties arising from the Policy's implied covenants of good faith and fair dealing, under which Defendants covenanted that they would, in good faith and in the exercise of fair dealing, deal with Baymont fairly and honestly, faithfully perform their duties of representation, and do nothing to impair, interfere with, hinder, or potentially injure Baymont's rights to receive the benefits provided by the Policy.

131. An insurer breaches its duty of good faith and fair dealing when it engages in unfair claim settlement practices, denying and delaying due payment of available benefits under the Policy.

132. At all times, Baymont fulfilled its obligations under the Policy and acted in accordance with its duty of good faith and fair dealing.

133. As a matter of routine business practice and in furtherance of a pattern and practice of wrongful conduct in handling claims, Defendants breached the insurance contract and breached the covenant of good faith and fair dealing in the insurance contract.

134. As further outlined above, Defendants have no reasonable basis for delaying or denying the benefits of the Policy, and Defendants knew of, or recklessly disregarded, the lack of a reasonable basis.

135. Defendants' reckless indifference to the facts or to the law can be inferred and imputed from its actions; specifically, Defendants unreasonably ignored Baymont's

**Page 19 of 20**

communications and evidence demonstrating hail stone impact damages resulting from the covered Loss.

136.    Defendants' reckless indifference to the facts or to the law can be inferred and imputed from its actions; specifically, Defendants unreasonably ignored Baymont's estimates, engineering experts and expert's reports illustrating significant hail stone impact damages resulting from the covered Loss.

137.    Defendants' reckless indifference to the facts or to the law can be inferred and imputed from its actions; specifically, Defendants unreasonably ignored Baymont's reports, photographs, and estimates favoring replacement of the damaged roof, EFIS siding, sign, windows, interior water damage, and guttering resulting from the covered Loss.

138.    Defendants have, in violation of the covenant of good faith and fair dealing, hindered the timely resolution of Baymont's Claim.

139.    Defendants acted with knowledge or reckless disregard of the lack of reasonable basis for the delay, denial and/or underpayment of the Claim.

140.    Defendants' reckless indifference to the facts, evidence, and the proof submitted by Baymont and its representatives is part of an institutional pattern and practice of improper claims handling practices.

141.    Defendants' failure to attempt in good faith to effectuate prompt, fair, and equitable settlement of Baymont's Claim is part of an institutional pattern and practice of improper claims handling practices.

142.    Defendants utilized unfair claims settlement practices in violation of Section 10-3-1104 of Colorado Revised Statutes, and the use of such unfair claims settlement practices amounts to a violation of the covenant of good faith and fair dealing.

143. As alleged above and among other circumstances, Defendants committed numerous, willful or reckless unfair claim settlement practices including, without limitation:

    a.    Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under the insurance Policy it wrote and issued, including a failure to substantively respond to any communications from Baymont's representatives since October 2020;

    b.    Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the insurance Policy;

    c.    Refusing to pay claims without conducting a reasonable investigation based upon all available information, ignoring material information supplied by its insured to "justify" deficient assessments of its liability under the Policy;

    d.    Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear, such that the damages from the hail event have not been acknowledged as being owed by Defendants;

    e.    Failing to reasonably adjust and compelling Baymont to utilize litigation to recover amounts due under the insurance Policy by failing to timely pay all amounts not in dispute; and

    f.    Encouraging its claim representatives, including William Ardoline, to engage in unfair claims settlement practices against Baymont, thereby violating applicable standards in the industry and the laws and regulations of the State of Colorado.

144. As a direct and proximate result of its failure to treat Baymont in good faith and with fair dealing and/or its unfair property and casualty settlement practices, Baymont has suffered compensatory damages, consequential damages, pre- and post-judgement interest, attorneys' fees, engineer fees, costs, and expenses.

145. AmGUARD has committed such actions willfully and with such frequency as to indicate a general business practice.

WHEREFORE, Plaintiff, 2505 6th Street, LLC, d/b/a Baymont by Wyndam Limon, respectfully request this Court enter judgment against, Defendants, WestGUARD Insurance Company and AmGUARD Insurance Company, for all damages suffered as a foreseeable and

proximate result of the conduct alleged herein, pre and post judgment interest, attorneys' fees in accordance with applicable law, costs including expert witness fees, and such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

146.    Baymont demands trial by jury with respect to all claims and issues triable to a jury.

Dated: May 18, 2021                       Respectfully submitted,

                                          */s/ Timothy G. Burchard, II*
                                          Jonathan E. Bukowski, Esq.
                                          Colorado Bar No.: 45614
                                          Timothy G. Burchard, Esq.
                                          Colorado Bar No.: 48635
                                          Merlin Law Group, PA
                                          1001 17th Street, Ste. 1150
                                          Denver, CO 80202
                                          Telephone:  720-665-9680
                                          Facsimile:  720-665-9681
                                          E-Mail: jbukowski@merlinlawgroup.com
                                          E-Mail: tburchard@merlinlawgroup.com