IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 21–cv–01673–WJM–MDB


2506 6TH STREET, LLC d/b/a BAYMONT BY WYNDHAM LIMON,

      Plaintiff,

v.

WESTGUARD INSURANCE COMPANY, and
AMGUARD INSURANCE COMPANY,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

      This matter comes before the Court for recommendation on Plaintiff's Motion for Leave to Amend Its Complaint to Add a Claim for Exemplary Damages. ([the "Motion" or "Motion to Amend"] Doc. No. 63.) Defendants have filed a Response to the Motion to which Plaintiff has replied. (Doc. Nos. 70; 71.) Having reviewed the Motion and associated briefing, the docket, and applicable law, this Court respectfully RECOMMENDS that the Motion to Amend be **GRANTED**.

### BACKGROUND

      Plaintiff initiated this case on May 18, 2021, by filing a complaint in Lincoln County District Court, which alleges that Defendant insurers improperly handled its claim in connection

to a severe Spring 2020 storm which damaged its hotel property in Limon, Colorado.[1] (Doc. No. 5.) The case was removed to federal court by Defendants based on diversity jurisdiction on June 17, 2021. (Doc. No. 1.) Plaintiff asserts claims for breach of contract, unreasonable delay and denial of payment of covered benefits, and common law bad faith. (*Id.*) Plaintiff now seeks to add a claim for exemplary damages as well, alleging that Defendants "purposefully concealed relevant information confirming extensive storm damage by three separate consultants, and further, acted heedlessly and recklessly without regard to consequences to Plaintiff." (Doc. No. 63 at 15.)

## I.     Plaintiff's Motion to Amend

Plaintiff alleges that on August 2, 2020, a severe storm traveled through Limon, Colorado, bringing significant wind and hail and causing extensive damage to Plaintiff's property, a hotel doing business as Baymont by Wyndham Limon. (Doc. No. 63 at 4.) Shortly thereafter Plaintiff reported its claim to Defendants who in turn assigned desk adjuster, William Ardoline, and retained independent adjustor, Theodore Miller, to inspect Plaintiff's property. (*Id.*) Miller inspected the property on August 6, 2020 and detailed his findings in a report on August 25, 2020. (*Id.* at 5.) In an email to Defendants a day after the inspection, Mr. Miller called the shingle roof a "total [loss]." (Doc. No. 63-1.) Further, the report detailed significant damage to the siding, wood fascia, windows, fencing, doors, exterior lights, and free-standing signage—all attributed to the storm. (Doc. No. 63-2.) At the time, Plaintiff did not receive a copy of the report or any information about its contents from Mr. Miller or Defendants. (Doc. No. 63

---

[1] According to Plaintiff, Defendant "AmGUARD Insurance Company is one of several carries serviced by [Defendant] WestGUARD Insurance Company." (Doc. No. 63 at 4.)

at 5.) Shortly after submitting his report to Defendants, Mr. Miller was removed from the claim and told by Defendants to close his file. (*Id.*; Doc. No. 63-3 at 2.)

Defendants then retained a second independent adjuster, Brian Rubidoux, and a professional engineer, William Oviatt. (Doc. No. 63 at 5.) Mr. Rubidoux and Mr. Oviatt inspected the property in September 2020, and each created a report of the findings. (Doc. Nos. 63-4; 63-5.) Mr. Oviatt's report detailed the scope of the damage caused by the storm, distinguishing such damage from damage unrelated to the storm. (Doc. No. 63-5 at 4–6.) Defendants received a copy of the Rubidoux report on October 6, 2020, and Mr. Oviatt's report on November 20, 2020. (Doc. No. 63 at 6.) These reports did not include a detailed estimate of the damages. (Doc. Nos. 63-4; 63-5.) At the time, neither report, nor their contents, were shared with Plaintiff. (Doc. No. 63 at 6.)

On October 20, 2020, Plaintiff provided Defendants with a scope of damage and cost estimate prepared by contractor CJ Restoration. (*Id.*; Doc. No. 63-7.) Defendants did not respond to Plaintiff's estimate. (Doc. No. 63 at 6.) Indeed, Plaintiff alleges that Defendants took no action on the claim from December 2020 through March 2021. (Doc. No. 63 at 6; *see* Doc. No. 70-1.) In spring 2021, having not heard from Defendants and having not received payment on the claim, Plaintiff hired professional engineer Gregory Kaszas to inspect the property and prepare a report on its behalf. (*Id.*) Mr. Kaszas' report detailed damage similar to the Miller, Rubidoux, and Oviatt reports. (*Id.*; Doc. No. 63-8.) Plaintiff provided Mr. Kaszas' report to Defendants in May 2020 (Doc. No. 63 at 7.) Defendants did not respond. (*Id.*) Plaintiff initiated the instant

lawsuit on May 18, 2021. (*Id.*) At the time this lawsuit was filed, Plaintiff had not received a

payment on their claim.[2] (*Id.*)

After the lawsuit was initiated, Defendants hired JS Held to conduct a third evaluation of

the property. (*Id.*) JS Held inspected the property and prepared a report dated October 15, 2021.

(*Id.*; Doc. No. 63-10.) The report included an estimate of $315,796.44 in replacement cash value.

(Doc. No. 63-10 at 37.) On November 1, 2021, Plaintiff received a payment on its claim. (Doc.

No. 63 at 7.)

## II.    Defendants' Response

Defendants do not substantially dispute the timeline as described by Plaintiff. (*See*

*generally* Doc. No. 70.) First, Defendants agree that Mr. Miller was the first independent

adjustor assigned to the claim by Defendants to inspect the property. They further agree that Mr.

Miller was told to close his file shortly after submitting his report. (*Id.* at 2; Doc. No. 70-2.)

However, Defendants contend that an internal decision to remove Mr. Miller from the claim and

"to return the file in-house" was made prior to Mr. Miller submitting the report on August 25,

2020, and thus was not done in response to the report's contents.[3] (Doc. No. 70 at 2.)

---

[2] Additionally, after this suit was filed, Plaintiff was sued in Colorado state court by two
employees for injuries allegedly caused by Plaintiff's failure to timely repair damage caused by
the storm. *See Clay, Ashley et al. v. 2505 6th Street LLC*, 2021CV030009 (Lincoln Dist. Ct.
December 3, 2021).

[3] The Raphael and Associates—the employer of Mr. Miller—claim diary submitted by
Defendants shows two entries on August 11, 2020, which say "[t]his claim has been returned to
Guard" and "[f]ile returned to Guard please close." (Doc. No. 70-1.) However, Defendants do
not address how Mr. Miller's August 7, 2020, email, which called the property's roof a "total
[loss]," may have affected its decision-making, if at all.

Next, Defendants acknowledge hiring Mr. Oviatt to inspect the property. (*Id.*) Defendants further agree that Mr. Oviatt's report defined the scope of the damage caused by the storm, distinguishing damage he believed was unrelated. (*Id.* 2–3; Doc. No. 70-4.) Defendants received this report on November 30, 2020. (Doc. No. 70 at 3.) Defendants further agree that they received CJ Restoration's (retained by Plaintiff) estimate on or around October 20, 2020. (*Id.*) CJ Restoration estimated $434,949.90 in damages, but Defendants contend that several items included in the estimate were outside the scope of damage caused by the storm. (*Id.*)

Defendants say that they later reassigned the claim to Raphael & Associates to obtain an estimate based on Mr. Oviatt's report. (*Id.*) The claim diary provided by Defendants indicates that this reassignment took place on April 18, 2021. (Doc. No. 70-1.) Defendants do not indicate what claim-related activities took place between December 2020 and March 2021.[4] Defendants acknowledge receiving Mr. Kaszas' (retained by Plaintiff) report on May 7, 2021, but say Raphael & Associates was given insufficient time to consider and act on Mr. Kaszas' findings prior to the filing of this suit on May 18, 2021. (*Id.*)

Finally, Defendants acknowledge hiring JS Held to conduct a new inspection of the property on October 6, 2021, and to provide an estimate. (*Id.*) JS Held estimated $315,796.44 in replacement cost value and $268,237.98 in actual cost value ["ACV"]. (Doc. Nos. 70-8; 70-9 at 39.) Defendants say they paid Plaintiff the ACV minus its deductible. (Doc. No. 70 at 4.)

## LEGAL STANDARD

---

[4] Defendants do not appear to deny their alleged failure or refusal to communicate with Plaintiff while the claim was pending prior to this suit. (*See* Doc. No. 70.)

"Ordinarily, Rule 15(a)(2) and Rule 16(b)(4) of the Federal Rules of Civil Procedure would apply when, as here, a party seeks to amend its pleading after the deadline set in the Scheduling Order." *Sands v. Integon Nat'l Ins. Co.*, No. 18-cv-00714-PAB-NYW, 2020 WL 8188184 (D. Colo. Mar. 9, 2020). However, courts in this District have held that § 13-21-102 of the Colorado Revised Statutes, not Federal Rule of Civil Procedure 15 or 16, controls the inquiry when a pleading amendment concerns exemplary damages.[5] *See, e.g.*, *Wollam v. Wright Med. Grp., Inc*., No. 10-cv-3104-DME-BNB, 2012 WL 4510695, at *9 (D. Colo. Sept. 30, 2012); *Witt v. Condos. at the Boulders Ass'n*, No. CIVA04CV02000MSKOES, 2006 WL 348086, at *7 (D. Colo. Feb. 13, 2006); *see also Am. Econ. Ins. Co. v. William Schoolcraft*, *M.D., P.C.*, No. 05-cv-01870-LTB-BNB, 2007 WL 160951, at *2 (D. Colo. Jan. 17, 2007). Indeed, because some discovery is required before a litigant can seek to add a request for exemplary damages, it would be unfair to hold litigants to the ordinary amendment standards. *See* Colo. Rev. Stat. § 13-21-102(1.5)(a) (providing that plaintiffs can move for exemplary damages "only after the exchange of initial disclosures pursuant to Rule 26 of the Colorado Rules of Civil Procedure," and only when they establish *prima facie* proof of a triable issue). Even with the application of § 13-21-102, however, a court may still deny a motion to amend to add exemplary damages because of delay, bad faith, undue expense, or other demonstrable prejudice. *Stamp v. Vail Corp*., 172 P.3d 437, 449 (Colo. 2007) (citation omitted).

Section 13-21-102 provides that an award of exemplary damages is permissible when "the injury complained of is attended by circumstances of fraud, malice, or willful and wanton

---

[5] Here, neither party disputes the applicability of Colorado law to the determination of whether Plaintiff can add a claim for punitive damages.

conduct." Colo. Rev. Stat. § 13-21-102(1)(a). "'[W]illful and wanton conduct' means conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." *Id.* § 13-21-102(1)(b). "Simple negligence cannot support such an award." *Blood v. Qwest Servs. Corp.*, 224 P.3d 301, 314 (Colo. App. 2009). Instead, "where a Defendant is conscious of both its conduct and the existing conditions, and knew or should have known that injury would result, the requirements of 13-21-102 are met." *Id.* The purpose of the award of punitive damages is to punish the wrongdoer, not compensate for injuries. *See Lira v. Shelter Insurance Co.*, 913 P.2d 514, 517 (Colo. 1996).

A prima facie showing is a low burden relative to the burden of proof at trial. *Affordify, Inc. v. Medac, Inc.*, No. 19-cv-02082-CMA-NRN, 2020 WL 6290375, at *5 (D. Colo. Oct. 27, 2020) (describing the burden on a motion to amend pursuant to § 13-21-102 as "an admittedly low threshold"); *see also RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, No. 16-cv-1301-PAB-GPG, 2018 WL 3055772, at *4 (D. Colo. May 10, 2018) ("At this stage of the litigation, the Court is only concerned with whether the evidence, when viewed in the light most favorable to plaintiffs, is sufficient to make out a *prima facie* case of willful and wanton behavior for the purpose of allowing plaintiffs to amend their Complaint to include exemplary damages, not whether such evidence is sufficient to defeat a motion for summary judgment or to result in a jury verdict in plaintiffs' favor."). "The question of whether the plaintiff has established sufficient proof to add a claim for exemplary damages lies within the sound discretion of the trial court." *Stamp*, 172 P.3d at 449 (citation omitted).

**ANALYSIS**

Broadly, Plaintiff's argument for exemplary damages proceeds in two parts. First, Plaintiff contends that Defendants purposefully and fraudulently concealed favorable information from Plaintiff during the claim adjustment. (Doc. No. 63 at 8–10) Second, Plaintiff alleges that Defendants willfully and wantonly failed to act quickly on Plaintiff's claim, including by failing or refusing to communicate with Plaintiff, causing direct and avoidable damage to Plaintiff. (*Id.* at 10–13.) Plaintiff argues that Defendants' alleged actions warrant allowing the Complaint to be amended to include a claim for exemplary damages.

## I.   Alleged Concealment of Information Related to the Claim

Plaintiff first alleges that Defendants concealed information regarding the storm damage. (Doc. No. 63 at 8–10.) Plaintiff points to the reports of Mr. Miller, Mr. Oviatt, and Mr. Rubidoux, each of which was allegedly withheld from Plaintiff, despite its numerous requests for information and updates. (*Id.*) Plaintiff further points to the Defendants' decision to dismiss Mr. Miller from the claim—the exact timing of which is disputed by Defendants—as additional evidence that Defendants took calculated steps to avoid informing Plaintiff of the extent of the damage. (*Id.* at 9.) Plaintiff concludes that "despite all reasonable expectations to the contrary, Defendants have displayed a pattern of concealing information from their policyholders, particularly when such information is favorable to a policyholder's claim." (*Id.* at 10.)

In response to Plaintiff's argument, Defendants contend that Plaintiff has failed to establish "any duty to disclose such reports" and further that it has failed to "address any other element of fraud." [6] (Doc. No. 70 at 7.) Defendants also note that "Plaintiff fails to cite a single

---

[6] Colo. Rev. Stat. § 13-21-102 expressly contemplates punitive damages in civil actions where the injury claimed "is attended by circumstances of fraud." Colo. Rev. Stat. § 13-21-102(1)(a) Thus, a "finding that the elements of fraud [are] established also establishe[s] the 'circumstances

case or regulation requiring insurers to produce internal engineering and adjuster's reports." (*Id.* at 6.)

To the extent Defendants contend Plaintiff has failed to make a prima facie showing for exemplary damages based solely on their failure to share expert reports with Plaintiff, the Court agrees. As Defendants note, Plaintiff does not cite any case which suggests that an insurance company has a duty to share its engineer or adjuster reports with the insured as a matter of course. Likewise, the Court's independent research did not uncover such a case. Further, as Defendants correctly note, Plaintiff's Motion and Reply do not address the elements of a fraudulent concealment claim. *See Wiley v. Byrd*, 408 P.2d 72, 74 (Colo. 1965) (noting that "fraud must be pleaded with considerable particularity").

## II.    Alleged Willful and Wanton Failure to Act on the Claim

However, Plaintiff does not solely allege a failure to share adjuster reports. Plaintiff paints a broader picture that suggests Defendants intentionally slow-played the claim—whereby the failure to share reports was merely one facet of Defendants' questionable conduct. To this end, Plaintiff also cites Defendants' alleged failures to respond to any communications, its decision to conduct several inspections of Plaintiff's property with different adjustors—including quickly dismissing its original outside adjuster—and Defendants' apparent lack of action on the

---

of fraud' required for punitive damages." *Berger v. Sec. Pac. Info. Sys., Inc.*, 795 P.2d 1380, 1386 (Colo. App. 1990) (upholding award of exemplary damages where the plaintiff prevailed on her fraudulent concealment claim at trial). "The elements of fraudulent concealment are: (1) the defendant's concealment of a material existing fact that in equity or good conscience should be disclosed, (2) the defendant's knowledge that the fact is being concealed, (3) the plaintiff's ignorance of the fact, (4) the defendant's intent that the plaintiff act on the concealed fact, and (5) the plaintiff's action on the concealment resulting in damage." *Berger*, 795 P.2d at 1385.

claim from December 2020 through March 2021. (Doc. No. 63 at 10–13.) Further, Plaintiff contends that its communication attempts with Defendants were "repeated[]" and "detailed the ramifications of continued delay to Plaintiff"—including the "devastating impact" to Plaintiff's business and the danger of new damage caused by the long unaddressed storm damage. (*Id.* at 11, 12.) These allegations, taken as a whole, Plaintiff contends, are sufficient to make a prima facie showing that Defendants acted willfully and wantonly and without regard to potential consequences that were clear or should have been clear to them.

Defendants contend that Plaintiff is inappropriately using a "mere delay" in receiving payment to attach exemplary damages to a statutory claim for unreasonable delay/denial of benefits—a type of claim they contend should not form the basis for punitive damages. For this proposition, Defendants cite *Residences at Olde Town Square Association v. Travelers Casualty Insurance Company of America*. 413 F.Supp.3d 1070 (D. Colo. 2019). In that case, after conducting a thorough review and analysis of relevant Colorado case law, The Honorable William J. Martinez denied a motion to add exemplary damages tied to a claim for statutory unreasonable delay or denial of insurance benefits, stating, "unreasonable delay/denial is not a wrong done to the person or to personal or real property, and so it may not be the basis for punitive damages."[7] *Id.* at 1079.

However, the plaintiff in *Olde Town Square* only brought a claim for statutory "unreasonable delay or denial of insurance benefits in violation of Colorado Revised Statutes [§ 10-4-1116]." *Id.* at 1073. Here, Plaintiff also brings a claim for common law bad faith, a type of

---

[7] Judge Martinez acknowledged that the Colorado Supreme Court had not ruled on this particular issue, forcing the court to "predict how the [it] would rule on the question." *Residences at Olde Town Square Association*, 413 F. Supp. 3d at 1074.

claim Judge Martinez explicitly noted was not addressed by his decision. *Id*. at 1075 ("[P]unitive damages *are* available for bad faith claims." (emphasis in original)); *see Ballow v. PHICO Ins. Co.*, 878 P.2d 672, 682 (Colo. 1994) (saying that exemplary damages may be awarded on a claim of bad faith breach of an insurance contract, so long as the breach is accompanied by circumstances of fraud, malice, or willful and wanton conduct." (quotation omitted)). Indeed, other courts have noted that exemplary damages remain available for common law bad faith claims even in light of *Olde Town Square*. *See Graham v. State Farm Mut. Auto. Ins. Co.*, No. 19-CV-00920-REB-NYW, 2020 WL 9720368, at *6 n.5 (D. Colo. June 30, 2020), *report and recommendation adopted*, No. 19-CV-00920-REB-NYW, 2021 WL 2092813 (D. Colo. Mar. 31, 2021) ("To the extent that Mr. Graham's claim was limited to one for statutory delay, it appears that at least one court in this District has held that punitive damages are not available for a claim for unreasonable delay of insurance benefits under Colorado statute. But it is clear that punitive damages are available for the common-law tort of bad faith breach of contract and are considered as auxiliary to an underlying claim for actual damages." (internal citations omitted)); *Stoker v. State Farm Mut. Auto. Ins. Co.*, No. 19-CV-03569-NYW, 2021 WL 681444, at *10 n.10 (D. Colo. Feb. 22, 2021) (saying the same). Accordingly, the Court's analysis of the issue proceeds past the threshold question of whether exemplary damages *can* be added to Plaintiff's Complaint.

Plaintiff's allegations are similar to those considered by the Honorable Magistrate Judge Kristen Mix in *Stanton v. Encompass Indemnity Company*. No. 12-cv-00801-PAB-KML, 2013 WL 2010829 (D. Colo. May 14, 2014). That case concerned a claim for underinsured motorist coverage, and according to plaintiffs, the defendant insurance company had "failed to timely communicate with Plaintiffs about their claims, investigate Plaintiffs' claims, pay Plaintiffs for

their claims,[8] or explain its decision process." *Id.* at *4. The plaintiffs further contended that they had consistently updated the defendant with requested and relevant information throughout the process but were unsuccessful in speeding up the defendant's process. *Id.* In the end, "[Defendant] without any stated reasons intentionally denied and delayed paying [the plaintiff] her covered policy benefits for approximately 15 months after having been provided with proof of her losses." *Id.* at *3. After reviewing these allegations "in the light most favorable to Plaintiffs," Judge Mix granted the amendment saying, "the Court finds [the allegations] sufficient to make out a prima facie case for willful and wanton behavior." *Id.* at *5 ("Plaintiffs have alleged that Defendant acted purposefully and willfully in failing to handle their claim and delayed issuing payment for fifteen months despite Plaintiffs' cooperation regarding supplying requested information. The Court finds that Defendant's alleged failure to engage in any further investigation and/or action on Plaintiffs' claim may demonstrate a prima facie case of heedless or reckless disregard for the consequences or rights of the insured." (internal citation omitted)).

The Court notes that the allegations here are not identical to those considered by Judge Mix in *Stanton*. For example, in *Stanton*, the defendant insurance company was alleged to have partially abandoned its responsibilities by "delegate[ing] their investigation responsibilities onto [Plaintiffs'] counsel." *Id.* at *3 (quotation omitted). Here, while Plaintiff does allege a four-month period where Defendants took no action on the claim, it does not make allegations as sweeping as those found in *Stanton*. Still, the Court finds the facts in *Stanton* sufficiently analogous. Like the plaintiffs in *Stanton*, Plaintiff alleges that Defendants acted willfully and

---

[8] Like here, the defendant had made payment by the time the court considered the motion to add a claim for exemplary damages. *Stanton*, 2013 WL 2010829, at *1.

wantonly by slow-playing the claims process over an extended period of time—including the aforementioned four months where Defendants allegedly conducted no work at all on the claim—and by refusing or failing to engage in any communication regarding the claim despite Plaintiff's repeated attempts to communicate and convey the urgency of the situation. Moreover, the allegations that certain adjusters were removed from the case and certain reports were withheld from Plaintiffs, also inform this Court's determination. While those allegations may not be sufficient on their own, when combined with the allegations of deliberate delay, they satisfy the relatively low threshold at this stage.

Finally, the Court notes that Defendants do not argue that they would suffer undue prejudice as a result of the Motion being granted, nor has the Court independently identified a source of undue prejudice from the addition of a claim for undue damages. *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1207 (10th Cir.2006) ("Courts typically find prejudice only when the [proposed] amendment unfairly affects the [defendant] in terms of preparing [its] defense to [claims asserted in the] amendment." (internal quotation omitted)).

Because Plaintiffs' allegations are sufficient to support a prima facie case that Defendants' conduct was "purposeful[] … dangerous, [and] done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others," Colo. Rev. Stat. § 13–21–102(1)(b); *Affordify, Inc.*, 2020 WL 6290375, at *5, and because the Court has not identified any prejudice or undue delay associated with the proposed amendment, the Court recommends granting Plaintiff's Motion.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, this Court respectfully

**RECOMMENDS** that "Plaintiff's Motion for Leave to Amend Its Complaint to Add a Claim for Exemplary Damages. (Doc. No. 63.) be **GRANTED**.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had

waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 30th day of November, 2022.

**BY THE COURT:**

Maritza Dominguez Braswell
United States Magistrate Judge